UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,                              Case No. 1:08-cv-907

v.                                              Hon. Robert J. Jonker

PEOPLEMARK, INC.,

        Defendant.
_____/

**ORDER GRANTING MOTION TO COMPEL**

Pending before the court is defendant Peoplemark's Motion to Compel Responses to its Second Set of Interrogatories and First Request for Production of Documents (docket no. 52). The motion is opposed.

**Background**

The discovery requests at issue were served on May 6, 2009, and plaintiff EEOC responded on June 11, 2009. The EEOC withheld information it thought was protected by the "governmental, deliberative process privilege, attorney-client privilege, and/or work product doctrine." *See, e.g.,* EEOC's response to Interrogatory No. 8 and Request for Production Nos. 17 and 23 (docket no. 52). Peoplemark felt the responses were defective and so advised the plaintiff.

The EEOC has made several attempts to provide an adequate privilege log. The first privilege log supplied by plaintiff (hereinafter "Privilege Log No. 1") listed eight categories of

1

documents that the EEOC excluded from production "on the basis of privilege."[1] According to Peoplemark, none of the statistical data, analyses, tables, or spreadsheets requested in Requests for Production Nos. 17 and 21 were described in any of the documents listed in that privilege log, nor were they produced. Defendant's Brief filed October 9, 2009 (docket no. 77) at 1-2. For this reason, on August 20, 2009, Peoplemark filed its motion to compel disclosures to its discovery requests. See Defendant's motion (docket no. 52). Following the filing of defendant's motion to compel, the EEOC produced 26 pages of documents.[2]

On September 3, 2009, the EEOC filed its response to Peoplemark's motion to compel. It also filed the first Declaration (hereinafter, the "first declaration") of Stuart J. Ishmaru (Mr. Ishimaru), acting Chairman of the EEOC (docket no. 59), asserting the governmental deliberative process privilege, along with what amounted to a second privilege log (hereinafter "Privilege Log No. 2"). The declaration was unsigned, but was subsequently signed on September 9, 2009. Docket No. 64. Mr. Ishimaru's declaration claimed the governmental deliberative process privilege for all information requested in Interrogatory No. 8, and for the specific documents described in "Exhibit B" to his declaration (i.e. Privilege Log No. 2). First Declaration, ¶ 4. Privilege Log No. 2 identified ten categories of information rather than the eight categories or paragraphs in Privilege Log No. 1, and was considerably different from Privilege Log No. 1.[3]

---

[1] Privilege Log No. 1 may be found at Docket No. 52-6, p. 14-15.

[2] A list of these documents may be found in defendant's brief of October 9, 2009 (docket no. 77) at footnote 2.

[3] For example, in paragraph 1, Privilege Log No. 2 attempted to protect 5 pages of information, rather than 20 pages in Privilege Log No. 1; paragraph 2 of Privilege Log No. 1 became paragraph 9 of Privilege Log No. 2 and attempted to protect 8 pages rather than 61 pages; paragraph 3 of Privilege Log No. 1 became paragraph 7 of Privilege Log No. 2; paragraphs 4, 6, 7 and 8 of Privilege Log No. 1 are not found Privilege Log No. 2 (these would reappear in Privilege Log No. 3, see footnote 4, *infra)*; paragraph 5 of Privilege Log No. 1 became paragraph 8 of Privilege Log No. 2; and the remaining paragraphs of Privilege Log No. 2, being ¶¶ 3, 4, 5, 6 and 10 appear to be new assertions of privilege.

The court held a hearing on the motion to compel on September 18, 2009. The EEOC was directed to file an amended privilege log outlining which privileges it claimed for which documents, along with the documents themselves, so the court could conduct an *in camera* review. On September 28, 2009, the EEOC submitted to the undersigned an Amended Privilege Log (docket no. 77-4) (hereinafter Privilege Log No. 3) signed that date by Dale Price, counsel for EEOC, along with documents for *in camera* review. The EEOC also provided a second Declaration (hereinafter, the "second declaration") from Mr. Ishimaru dated September 25, 2009. Privilege Log No. 3 was an annotated version of Privilege Log No. 2, and was again renumbered.

The second declaration of Mr. Ishimaru, dated September 25, 2009, was limited to only claiming the governmental deliberative process privilege for those documents described in an "Exhibit A," which was attached to the declaration. "Exhibit A" contained four categories.[4] Thus, the governmental deliberative process privilege asserted by the EEOC through its acting chairman, Mr. Ishimaru encompasses, and is now limited to, all information sought by Interrogatory No. 8, the documents described in Privilege Log No. 2 (being Exhibit B to Mr. Ishimaru's first declaration), and the four items listed in footnote 4, *supra.*

Mr. Ishimaru's first declaration stated that the decision to which the governmental deliberative process privilege was claimed was the decision to file the lawsuit. See ¶ 2 of the first declaration. The declaration did not provide the date the decision to file the lawsuit was made, and the court is unaware that plaintiff has ever identified this date.[5] The second declaration of Mr.

---

[4]Briefly summarized, these are: (a) a memorandum from Gail Cober to Joy Pentz dated September 11, 2006 (four pages); (b) an email from Omar Weaver to two other attorneys, dated December 14, 2006 (one page); (c) email messages between Omar Weaver and Gail Cober dated December 15, 2006 (one page); and (4) email from Omar Weaver to other attorneys and investigators, dated April 6, 2007 (two pages).

[5]The decision obviously predated September 29, 2008, however, the date the complaint was filed.

Ishimaru, dated September 25, 2009, does not identify any decision to which the governmental deliberative process privilege is applicable. However, since Mr. Ishimaru refers in his second declaration to his earlier declaration, one may reasonably infer that he is asserting the privilege in regard to the same decision referred to in the first declaration (i.e., the decision to file this lawsuit), and the court will make this assumption. See paragraph 2 of the second declaration.

On October 14, 2009, at the conclusion of a hearing on another motion in this matter, the EEOC was given until October 26, 2009 to file a response to a brief filed five days earlier by Peoplemark (docket no. 77), which was in response to the EEOC's submission of Privilege Log No. 3. The court also asked the EEOC to provide more specific explanations as to the privileges it was raising in its privilege log. On October 26, 2009, the EEOC filed a supplemental brief (docket no. 82) along with its "Second Amended Privilege Log" (docket no. 83) (hereinafter Privilege Log No. 4).[6] In Privilege Log No. 4, plaintiff has refined its annotations regarding the privileges it is asserting.

**The Governmental Deliberative Process Privilege**

The governmental deliberative process privilege permits the government to withhold from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Department of the Interior v. Klammath Water Users Protective Association*, 532 U.S. 1, 8 (2001); *Parke Davis & Co. v. Califano,* 623 F.2d 1, 5 (6th Cir. 1980) ("The reason for shielding the deliberative process is the necessity to foster the policy of open, frank discussion between subordinate and chief concerning administrative action.") (internal quotation marks omitted). To

---

[6]On November 3, 2009, Peoplemark filed its response to the most recently amended privilege log (docket no. 86).

qualify for protection under this privilege, a document must meet two requirements: (1) the document must be "pre-decisional," that is, it must have been "received by the decision-maker on the subject of the decision prior to the time the decision is made," and (2) the document must be "deliberative," meaning the document was "the result of a consultive process." *Rugiero v. U.S. Department of Justice,* 257 F.3d 534, 550 (6th Cir. 2001); *accord, Norwood v. F.A.A.,* 993 F.2d 570, 576-77 (6th Cir. 1993); *Schell v. Dept. of Health & Human Services,* 843 F.2d 933, 940 (6th Cir. 1988). However, purely factual matters that do not reflect deliberative process are not protected. *EPA v. Mink,* 410 U.S. 73, 87-89, 1973 (holding that the privilege does not protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context. . ."). The following would be examples of material that is not protected: who the EEOC interviewed during its investigations; who conducted the investigations; the facts on which the EEOC based its cause determinations; the documents or testimony on which the EEOC based its finding of fact included in the determinations; the actions taken during the investigation by the EEOC; the communications between the EEOC and witnesses (both from plaintiffs' side and defendant's side); and the dates on which the investigations were started and finished. This information would not be shielded by the deliberative process privilege because the privilege does not protect purely factual or objective material. *See, Bobby McCall, et al v. Lockheed Martin Corp.,* 2006 U.S. Dist. LEXIS 46772 (S.D.Miss., July 10, 2006).

When a government agency has asserted the deliberative process privilege, the burden of demonstrating the requested documents are both pre-decisional and deliberative falls on the agency. *Van Aire Skyport Corp. v. FAA,* 733 F.Supp. 316, 321 (Dist. Colo. 1990). The claim of privilege is raised by a formal claim made by the head of the agency after he has personally

5

considered the material in question. *Alpha I, L.P. v. United States,* 83 Fed. Cl. 279, 289 (2008). He does so by submitting a declaration stating the precise reasons for reserving the confidentiality of the investigative report and identifying and describing the documents to which the privilege is asserted. *See EEOC v. Continental Airlines Inc.,* 395 F.Supp. 2d. 738, 741 (N.D.Ill. 2005); *see also, United States v. Reynolds,* 345 U.S. 1, 7-8 (1953).

### Attorney-Client Privilege and Work Product Rule

These two rules are well known and need not be set out for purposes of this order.

### Review of Privilege Claims

The court has closely reviewed *in camera* the documents that the EEOC has listed in its most recent privilege log, and each is discussed below. Where the court finds that a particular privilege applies to preclude discovery of an item, other asserted privileges are usually not discussed. The numbering of the documents, and the privilege arguments raised as to those documents, are taken from Privilege Log No. 4, the EEOC's latest privilege log.

1. **Transmittal Memorandum from EEOC General Counsel Ronald S. Cooper to EEOC Commissioners (5 pages) (hereinafter "Transmittal Memorandum").** This document is clearly protected by the governmental deliberative process privilege asserted by plaintiff. Although undated, it was by its terms a deliberative document presented to the EEOC decision-makers (presumably being the Commissioners) prior to and for the purpose of reaching the decision to file this lawsuit.

a.[7] **Emails from Indianapolis District Regional Attorney Laurie Young to Assistant General Counsel Christopher Lage, and from trial attorney Omar Weaver to Young, dated September 9, 2008.** These emails were attached as supporting documents to the Transmittal Memorandum from Cooper to the Commissioners discussed above, explain other supporting documents, and are protected by the governmental deliberative process privilege.

b.[8] **Analysis of labor pools in three markets where the defendant operates, prepared by Elvira Sisolak, a Senior Economist in the Office of General Counsel.** Although undated, these analyses were attached as a supporting exhibit to Transmittal Memorandum, *supra,* in support of the recommendation for litigation, and are protected by the governmental deliberative process privilege.

2. **Presentation Memorandum from Indianapolis district regional attorney Laurie Young to General Counsel Ronald S. Cooper, dated August 12, 2008 (8 pages) (hereinafter "Presentation Memorandum").** Although the EEOC has not revealed the date it decided to file this lawsuit, it is apparent the Transmittal Memorandum was received by the Commission prior to that date. And the Presentation Memorandum preceded the Transmittal Memorandum, since it was a recommendation from the Indianapolis district office to the Office of the General Counsel which the General Counsel then sent to the Commissioners along with the Transmittal Memorandum. The Presentation Memorandum contains an analysis of the merits of the case and the recommendation of the regional attorney and is a deliberative document protected by the governmental deliberative process privilege.

---

[7]Listed as item 2 on Privilege Log No. 2

[8]Listed as item 3 on Privilege Log No. 2

a. **Investigative memorandum from investigator Daron Calhoun to Indianapolis District Director Danny Harter, dated July 16, 2007 (4 pages).** Although factual portions of this memo have been produced to defendant, the EEOC has withheld portions from the first page and the second through fourth pages, containing the investigator's pre-decisional analysis of information obtained during the investigation, including analysis of statistical data, and the investigator's opinion and recommendation. This document was attached to the Presentation Memorandum above, and presented to the decision-makers regarding the merits of filing this action. As such, it falls within the protection of the governmental deliberative process privilege.

b. **Untitled document prepared by EEOC Social Science Analyst Ronald Edwards, which is undated (2 pages).** The EEOC describes this memorandum as "a pre-decisional statistical analysis of racial disparities in conviction rates considered by the Detroit Field Office in making its determination on the merits . . .." It was attached to the Presentation Memorandum as pages 43-44, and was, in fact, titled "Disparities in Conviction Rates" by Ron Edwards. It is part of the package submitted for the deliberation of the Commissioners, and is protected by the governmental deliberative process privilege.

c. **Draft complaint prepared by the Detroit Field Office, which is undated (4 pages). The EEOC asserts this document was an attachment to the Presentation Memorandum.** However, the only privilege asserted is the attorney-work product rule. The EEOC states that the document was prepared in anticipation of litigation by its attorneys. This draft of the complaint in this case is different from the complaint actually filed; it was also attached to the Presentation Memorandum. This document is protected under the work product rule. *See Blumenthal v. Druge,* 186 FRD 236, 243 n. 8 (D.D.C., 1999) ("Because a draft of a legal document

contains insights into the mental processes of the defendant's attorney, . . . it is properly shielded from disclosure as attorney-work product").

3. **Litigation worthy review memorandum from trial attorney Omar Weaver to Detroit Field Office Director Gail Cober, dated August 22, 2007 (3 pages).** The EEOC describes this document as the trial attorney's pre-decisional assessment of the merits, and asserts both the deliberative process privilege and the attorney-client privilege.

The EEOC states that it "asserts the deliberative process privilege because this memorandum was generated by a Commission attorney prior to the decision to issue the Letter of Determination. Consequently, it contains the opinions, mental impressions, research and recommendations of a Commission attorney to the Detroit Field Director." I find that the governmental deliberative process privilege does not apply to this document. The deliberative process privilege in this action was raised by the head of the EEOC, Mr. Stuart Ishimaru. To the extent that Mr. Ishimaru asserts the privilege as to this document, that assertion must be found in his first declaration in which he states that he personally reviewed this document among a number of others listed in Privilege Log No. 2. (Mr. Weaver's memorandum is item no. 7 in Privilege Log No. 2.) While Mr. Ishimaru may have reviewed this document prior to signing the first declaration in September 2009, there is no evidence before the court that this document was "received by the decision-maker[s] . . . prior to the time the decision [to file suit] [was] made," a year earlier. *Ruqiero, supra,* at 550 (emphasis added). Here the decision-maker was presumably the Commission itself. There is no indication this memorandum was forwarded from Detroit Field Director Gail Cober to the Office of General Counsel Ronald S. Cooper (see Presentation Memorandum) or by Cooper to the Commissioners (see Transmission Memorandum). Mr. Weaver's memorandum does

9

not appear to have moved far enough along the chain of command to have come within the deliberative privilege.

Irregardless, the EEOC also asserts the attorney-client privilege in regard to this memorandum because it constituted legal advice provided by an attorney to his client, the Detroit Field Director. The court concurs with this assessment, and the memorandum will be protected on this basis. *See New York City Managerial Employee Ass'n v. Dinkins,* 807 F.Supp. 955, 958 (S.D.N.Y., 1992) (documents that contained a discussion of legal advice given by the New York City Corporation Council to city officials and/or agencies were held to be protected by the attorney-client privilege).

**Item Nos. 4, 5 and 6 are undated spreadsheets prepared by various investigators to summarize data provided to them by defendant and to analyze that data.** (Item 4 was also prepared by an attorney.) Data from the spreadsheets was then used to prepare the Transmittal Memorandum and the Presentation Memorandum. The EEOC asserts the governmental deliberative process privilege in regard to each of these spreadsheets because they "were generated as part of the investigative process and prior to issuance of the Letter of Determination. The particular information, extracts and analyses performed by the Commission personnel were part of its deliberative analysis made prior to the issuance of the Letter of Determination." Privilege Log No. 4 at items 4-6.

Again, the governmental deliberative process privilege can only be asserted by Mr. Ishimaru. While Mr. Ishimaru stated in his First Declaration he had personally reviewed these documents (they were listed as items 4, 5 and 6 in Exhibit B to his Declaration, which was Privilege Log. No. 2), there has been no claim that he did so prior to the decision by the Commissioners to file

10

this lawsuit, which decision was made sometime prior to September 29, 2008. Nor is there any reason to believe these documents were received by the decision-makers by the time they decided to file the lawsuit. The spreadsheets were not attached to either the Transmittal nor Presentation Memorandums and there is no other evidence before the court to indicate these worksheets ever reached the Commissioners at all. *Rugiero, supra,* at 550. The EEOC has not met its burden in this regard. Moreover, purely factual matters not reflective of the deliberative process are not protected in any event, nor does the privilege protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memorandum and severable from its context . . .." *Mink, supra,* at 87-88.

Since the governmental deliberative process privilege does not protect these spreadsheets, and no other privilege has been asserted as to them, these documents shall be produced to the defendant forthwith.

7. **Memorandum from Detroit Field Director Gail Cober, to Indianapolis District Enforcement Manager Joy Pentz, dated September 11, 2006 (4 pages).** The EEOC asserts this document is protected by the governmental deliberative process privilege because it "was generated prior to the decision to issue the Letter of Determination, was generated as a request for consultation and assistance between the Commission personnel, reveals deliberative process with respect to the investigation and contains the opinions and impressions of the author." Privilege Log No. 4 at ¶7. Mr. Ishimaru invoked the protection of the governmental deliberative process privilege for this document in his Second Declaration.

Gail Cober prepared this memo approximately two years prior to the Commissioners' decision to file this lawsuit. It consists of input from the district office to an enforcement manager

11

at a preliminary stage of the investigation and seeks directions and resources. The EEOC provides no evidence that this memorandum ever reached the decision-makers or was considered by them nearly two years later on the ultimate issue of whether to file the lawsuit,[9] nor is there any reason to believe it would have been.

The EEOC points out that the Cober memo was generated prior to the decision to issue the Letter of Determination, but this is of no consequence. Mr. Ishimaru has never asserted the governmental deliberative process privilege as to the decision to issue the Letter of Determination, but only as to the decision to ultimately file the lawsuit.[10] Different decision makers were involved in these two decisions. As plaintiff itself points out, these were entirely separate matters.[11]

Since the governmental deliberative process privilege does not apply to this memorandum, and no other privilege has been asserted, the Cober memorandum shall be furnished to the defendant forthwith.

8. **Email message between Trial Attorney Omar Weaver, Supervisory Trial Attorney Deborah Barno and Field Director Gail Cober, dated December 15, 2006 (1 page).** The Commission asserts the attorney-client privilege in regard to this document, and that privilege clearly applies. *Dinkins, supra,* at 958.

---

[9]Nor is there any indication that even Mr. Ishimaru saw these documents prior to the decision to file the lawsuit being made. Mr. Ishimari's Second Declaration, prepared September 25, 2009, does not state when he reviewed the four additional items giving rise to that declaration.

[10]See Ishimaru's first declaration.

[11]Plaintiff's Supplemental Brief, filed October 26, 2009 (docket no. 82), at 2.

9. **Email message from Trial Attorney Omar Weaver to Supervisory Trial Attorney Deborah Barno and Regional Attorney Laurie Young dated December 14, 2006 (1 page).** This is a memo between three in-house attorneys pertaining to the enforcement of an administrative subpoena well prior to the decision to file a lawsuit. The EEOC asserts both the governmental deliberative process privilege and the protection of the work product rule.

The deliberative process privilege does not apply, since the EEOC has provided no evidence whatsoever that this in-house memo discussing the enforcement of a subpoena ever reached or was considered by the decision-makers in regard to the entirely separate and much later decision to file this lawsuit.

On the other hand, the document does contain the thoughts and mental impressions of Attorney Omar Weaver as to issues pertaining to the enforcement of the subpoena, and these thoughts were only shared with other in-house counsel. This document is protected by the work product rule. *See Newport Pacific Inc. v. County of San Diego,* 200 FRD 628, 634 (S.D. Cal., 2001) ("To the extent that the information at issue here is County Counsel's analysis of issues for presentation to the Board at closed session where the Board makes policy and strategy choices on litigation, the information is attorney-work product, and therefore protected from disclosure.").

10. **Email messages from Trial Attorney Omar Weaver to Supervisory Trial Attorney Deborah Barno, Regional Attorney Laurie Young, Field Director Gail Cober, Supervisory Investigator Linda Sankovich, and Investigator Daron Calhoun, dated April 6, 2007 (2 pages).** Among other things, the EEOC asserts the attorney-client privilege, which is applicable in this instance. *Dinkins, supra,* at 958.

**Interrogatory No. 8**

In Interrogatory No. 8, defendant sought a description of all documents, statistics and demographic data that the EEOC had at the time it filed the lawsuit which supported the claim in this action that Peoplemark's policies have a disparate impact on African-American applicants. The EEOC did not answer this interrogatory, other than promising to ultimately send its expert reports to defendant as required under the Case Management Order. Rather, it objected to the interrogatory "to the extent" it sought information protected from disclosure by the governmental deliberative process privilege, the attorney-client privilege, and/or the work-product doctrine. Further, the EEOC objected "to the extent" the interrogatory inquired into the sufficiency of the EEOC's investigation and the basis for its findings.[12]

Interrogatory No. 8 is a straight-forward request for evidence plaintiff had in its possession to support its claim in this lawsuit. Rule 26(b)(1), F.R.C.P., clearly provides that Peoplemark "may obtain discovery regarding any non-privileged matter that is relevant to [EEOC's] claim or [Peoplemark's] defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who

---

[12]**INTERROGATORY NO. 8:** Please list and describe in detail all documents, statistics, and demographics that you had at the time you filed this lawsuit that support your claim that there is or has been an adverse impact on African Americans as a result of defendant's policies. Your answer should include a complete description of all demographic documentation or evidence, its source, the precise geographic locations of the pool of qualified applicants for each of Defendant's locations that you contend will support your claims, any statistical evidence that you contend supports your claim, how and when the statistical evidence was calculated, whether any hypothesis tests have been performed, variables used, and whether the outcome of any tests were statistically significant and to what level of significance. Please include all evidence and figures used in the calculations, sources of the evidence and figures, and any other evidence supporting the claims, including the identity of any witnesses and documents supporting your claims.
     **ANSWER:** The EEOC objects to this request to the extent it seeks information that is protected from disclosure by the governmental deliberative process privilege, attorney-client privilege and/or work product doctrine. Further, the EEOC objects to this request to the extent it inquires into the sufficiency of the EEOC's investigation and the basis for its findings. Such matters are not relevant to the issue at bar – whether Defendant's employment practice actually violates Title VII – which will be determined de novo during this litigation. Without waiver of this objection, expert reports will be provided in accordance with the Case Management Order.

know of any discoverable matter." Indeed, such information need not even be admissible at trial if it appears to be reasonably calculated to lead to the discovery of admissible evidence. *Id.* The EEOC's statements that it objected "to the extent" that information might be privileged was simply a bit of sleight-of- hand to distract the reader from the fact that the EEOC was producing nothing at all. The Rule says that Peoplemark may obtain discovery of any relevant evidence not privileged; the EEOC cannot withhold <u>all</u> evidence on the basis that some of it might be privileged.

Neither is it sufficient to say the information will be forthcoming in expert's report which normally falls due at the end of the period of discovery, since, besides being selective, that simply deprives defendant of an opportunity to adequately investigate and analyze for itself information the plaintiff is relying upon.

Plaintiff also uses as an excuse for not answering Interrogatory No. 8 that defendant cannot challenge the sufficiency of the investigation the EEOC conducted prior to filing the lawsuit. Plaintiff's Brief dated September 3, 2009 (docket no. 59) at 6-8. But Interrogatory No. 8 does not do that. Interrogatory No. 8 only seeks discovery defendant is entitled to. The fact that the EEOC may have obtained information during an investigation which is relevant to the claim it chose to file in this court, does not (absent a specific privilege) somehow immunize that information itself from discovery. Nor does the fact plaintiff might not choose to use this information in court make it any less discoverable, if it is relevant to proving or defeating the claim, or could lead to admissible evidence which could help prove or defeat the claim. A party may not withhold evidence merely because it may prove detrimental to that party's position.

Throughout this litigation, the EEOC has confused its power to investigate compliance with the law, with its own obligations to abide by the Federal Rules of Civil Procedure

when it moves the matter into federal court. If the EEOC has relevant evidence, it must produce this evidence, within the rules. Nor may it withhold compliance with the rules based on its purported fear that the other side may use that evidence improperly. Even if the defendant were to challenge the sufficiency of the investigation, which it has not done here, plaintiff would have ample opportunity to respond to the propriety of that challenge.

## Conclusion

For the reasons discussed above, defendant's motion to compel (docket no. 52) is **GRANTED,** as follows:

    a)    Plaintiff shall produce to defendant within fourteen (14) calendar days of the date of this Order the following numbered items from Privilege Log No. 4 as discussed above: Items 4, 5, 6, and 7;

    b)    Plaintiff shall produce to defendant within fourteen (14) calendar days of the date of this order all discovery sought by Interrogatory No. 8 which is not privileged, and which has not heretofore been produced. In addition to any other sanctions arising from this matter, and without negating the plaintiff's obligation to comply with this Order, the court further holds that any evidence not produced by plaintiff in compliance with this Order may not be used by plaintiff at the trial in this matter. Plaintiff is free to identify that evidence subject to Interrogatory No. 8 and this Order that it has produced thus far, provided it does so with specificity and within the next 14 days.

Further, the court finds defendant is entitled to reasonable expenses incurred in making the motion, including attorney's fees, as the prevailing party on this motion. Rule 37(a)(5). Accordingly, if the parties cannot agree within fourteen (14) days of the date this order as to the amount of said expenses, defendant shall file within twenty-one (21) days of the date of this order

16

an affidavit and any supporting documents setting forth the amounts it seeks, and plaintiff shall respond in kind within seven (7) days thereafter. The court will resolve the issue of expenses on the documents, but reserves the right to hold a further hearing if necessary.

      **IT IS SO ORDERED.**

Dated: February 26, 2010                           /s/ Hugh W. Brenneman, Jr.
                                                                          HUGH W. BRENNEMAN, JR.
                                                                          United States Magistrate Judge